IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THEOPOLIS WILLIAMS,
#B-31679,

Plaintiff,

v.                                              No. 3:17-cv-01247-DRH

KAREN JAIMET, LARUE LOVE,
CHRISTINE BROWN, and
JOHN BALDWIN,

Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Theopolis Williams, an inmate currently housed at Pinckneyville Correctional Center ("Pinckneyville"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants have exhibited deliberate indifference to his medical condition and associated symptoms (folliculitis and associated pain/infections). In connection with these claims, Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify

cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff has a medical condition known as folliculitis, which causes ingrown hair, acne pustules, bleeding, and, at times, infections. (Doc. 1, pp. 7-9). Plaintiff entered Pinckneyville in 2014. (Doc. 1, p. 7). When he arrived, Plaintiff had an Andis[1] facial trimmer in his possession. (Doc. 1, p. 7). Plaintiff claims that this particular facial trimer – the Andis trimmer – is medically necessary because it minimizes the negative symptoms associated with his folliculitis. (Doc. 1, pp. 7-9). According to the Complaint, other facial trimers available at Pinckneyville do

---

[1] Andis is the brand name for the subject facial trimmer.

not meet Plaintiff's medical needs and, without the Andis trimmer, Plaintiff's condition worsens, causing infections and daily pain. (Doc. 1, pp. 7-9, 20).

Because of his medical condition, Plaintiff has a medical permit specifically allowing him to have a facial trimmer. (Doc. 1, pp. 7). In the past, when the Andis trimmer malfunctioned, Plaintiff was allowed to mail it back to the manufacturer for repairs (as it is still under warranty). (Doc. 1, pp. 7-8).

In late 2016, Plaintiff contacted "personal property" at Pinckneyville and submitted a request to have his trimmers sent out for repairs. (Doc. 1, p. 7). The request was denied by the First Shift Officer. *Id.* The First Shift Officer told Plaintiff he needed to obtain approval from Warden Jaimet or Assistant Warden Love. *Id.* Plaintiff submitted request slips to Jaimet and Love, but his requests were ignored. *Id.* Accordingly, Plaintiff contacted Defendant Brown at Pinckneyville's HealthCare Unit. *Id.* At this time, Plaintiff's condition and lack of access to a facial trimmer were causing flare-ups, pain, and infections. *Id.* Plaintiff did not receive a response. *Id.*

Accordingly, in January of 2017, Plaintiff filed a grievance. (Doc. 1, pp. 8, 14-15). In his grievance, Plaintiff indicated that due to his medical condition and broken facial trimmer, he had an infection in his face and was suffering on a daily basis. (Doc. 1, p. 14). He also claimed that the prison physician, Dr. Scott, "will not and cannot" give him antibiotics to keep fighting the infection off. (Doc. 1, p. 15).

Plaintiff filed numerous grievances regarding his worsening symptoms and requesting permission to send his trimmers out for repair. (Doc. 1, pp. 7-9, 14-15, 20). Plaintiff explained his condition and worsening symptoms, relayed that he had a medical permit for a facial trimmer, and explained that the shaving products issued by IDOC and/or available at Pinckneyville were insufficient and were causing infections and pain. *Id.*

A grievance dated January 11, 2017, was denied on January 31, 2017 by Counselor S. Mercier (not a defendant in this action). (Doc. 1, p. 14). The denial states: "Per the HCUA Grievant no longer has open areas on his face or neck. This issue has been addressed before. Clippers may be purchased on Commissary. There is no medical reason for spiral clippers at this time. Offender has not submitted for transfer since 6/19/15. Request to send out for repair was denied." *Id.* A memorandum dated February 23, 2017, authored by an unspecified grievance officer, further indicates that the grievance is being denied because the HCU had loaned Plaintiff a different brand of trimmers. (Doc. 1, p. 16).

Plaintiff submitted another request on February 15, 2017. (Doc. 1, p. 17). The request was directed to Assistant Warden Love and indicated that Plaintiff had another infection. *Id.* Plaintiff asked Love to authorize his request to send the Andis trimmer for repairs, stating Plaintiff had sufficient money in his account to pay for the repairs and/or the trimmer was under warranty. *Id.* The grievance was denied on February 17, 2017, instructing Plaintiff to review the reasons for the previous denial. (Doc. 1, pp. 8, 17).

Next, Plaintiff asked Brown to intervene on his behalf. (Doc. 1, p. 8). On March 10, 2017, Brown denied Plaintiff's request, stating "Healthcare does not have anything to do with fixing your clippers. Hair clippers are not a medical issue." (Doc. 1, pp. 8, 18).

On April 12, 2017, Plaintiff submitted a letter, detailing his condition and associated issues, to IDOC Director Baldwin. (Doc. 1, pp. 8, 20-21). Plaintiff received a response dated May 11, 2017, directing him to relay his complaints and request to his counselor. (Doc. 1, p. 20).

On May 18, 2017, Plaintiff submitted a request to Warden Jaimet. (Doc. 1, pp. 8, 19). Plaintiff indicated that he had folliculitis and that he could not use the trimmers provided by Pinckneyville. (Doc. 1, p. 19). Plaintiff requested permission to send the Andis trimmer out for repairs. *Id.* The request was denied, stating "this has been addressed." *Id.*

Plaintiff submitted another request on September 14, 2017. (Doc. 1, p. 19). This request was directed to "Warden, Mr. Thompson, Office." *Id.* The request was denied, indicating that the issue had previously been addressed by Assistant Warden Love. *Id.*

September 14, 2017 (grievance denied by Thompson stating the grievance had already been addressed by Love, Doc. 1, pp. 8, 19); May 11, 2017 (grievance directed to Baldwin, denied by Reynolds, a member of the Administrative review board). According to the Complaint, it is unclear whether Baldwin is aware of Plaintiff's grievance. (Doc. 1, p. 8).

Plaintiff contends that Jaimet, Love, Brown, and Baldwin have exhibited deliberate indifference to his serious medical condition (folliculitis and associated facial infections/pain) by refusing to allow him to send his facial trimmers for repair. (Doc. 1, pp. 7-9).

<u>**Merits Review Under § 1915(A)**</u>

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of this count does not constitute an opinion regarding its merit.

> **Count 1 –** Eighth Amendment deliberate indifference claim against Defendants for denying Plaintiff's repeated requests for permission to mail his Andis facial trimmer to the manufacturer for repair.

To put forth a viable medical claim under the Eighth Amendment, Plaintiff must allege that officials were "deliberately indifferent to his serious medical needs." *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). This claim involves a two-part inquiry: the plaintiff must first show that his condition "was objectively serious," and he must then allege that the defendants were deliberately indifferent towards his condition. *Id.*

An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). A serious medical condition need not be life-

threatening, *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997); it is enough that the "injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir.1996). Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez*, 111 F.3d at 1372. However, sufficiently serious pain can constitute a serious medical condition. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

According to the Complaint, Plaintiff suffers from folliculitis, which causes pain and infection. Plaintiff claims that the Andis trimmer helps to control these symptoms. Additionally Plaintiff claims that, without the trimmer, he has been experiencing daily pain and infections. Whether this amounts to an objectively serious medical condition is not clear. However, given the allegations of pain and infection, the inference cannot be ruled out at this early stage. *See Gutierrez*, 111 F.3d at 1372 n.7 (given liberal pleading standards for *pro se* complaints, "the 'seriousness' determination will often be ill-suited for resolution at the pleading stage").

The next question is whether Defendants responded with deliberate indifference to Plaintiff's serious medical need. The Complaint suggests Jaimet, Love, Baldwin, and Brown exhibited deliberate indifference by denying Plaintiff's requests to have his trimmers repaired. Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g.,*

*George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Additionally, non-medical staff are "entitled to defer to the judgment of jail health professionals" as long as they do not ignore complaints. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

That being said, deliberate indifference may be found where a government official knows about unconstitutional conduct and facilitates, approves, condones, or "turn[s] a blind eye" to it. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996)). An inmate's correspondence to a prison administrator may establish a basis for finding deliberate indifference where that correspondence provides sufficient knowledge of a constitutional deprivation and the official fails to investigate, and if necessary, rectify the unconstitutional condition. *Vance*, 97 F.3d at 993. In other words, prisoner requests for relief that fall on "deaf ears" may evidence deliberate indifference. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

Although it is a close call, giving Plaintiff the inferences to which he is entitled at this stage of the litigation, the Court cannot rule out the possibility that the Defendants were deliberately indifferent to Plaintiff's medical condition. Accordingly, Count 1 shall receive further review.

**Pending Motions**

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be referred to a United States Magistrate Judge for disposition.

## <u>Disposition</u>

**IT IS HEREBY ORDERED** that the Complaint, which includes **COUNT 1,** shall **PROCEED** against **JAIMET, LOVE, BROWN,** and **BALDWIN.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **JAIMET, LOVE, BROWN,** and **BALDWIN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate for further pre-trial proceedings, including disposition of Plaintiff's Motion for Recruitment of Counsel. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.12.06
16:02:13 -06'00'

**UNITED STATES DISTRICT JUDGE**